UNITED STATES of America
v.
Harry LEBHERZ.

UNITED STATES of America
v.
Lucian J. SLIRZEWSKI.

UNITED STATES of America
v.
Charles W. ERLENMEYER.

UNITED STATES of America
v.
George David PASSIONE, Jr.

Crim. Nos. 328–54, 236–54, 287–54, 347–54.

United States District Court,
D. New Jersey.
March 11, 1955.

Raymond Del Tufo, Jr., U. S. Atty., by Albert G. Besser, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Meth & Wood, by Theodore Sager Meth, Newark, N. J., for defendants Harry Lebherz, Lucian J. Slirzewski and Charles W. Erlenmeyer.

Leon M. Waks, Paterson, N. J., for defendant George D. Passione, Jr.

Hayden C. Covington, Brooklyn, N. Y., of counsel, for defendants.

MEANEY, District Judge.

These are criminal prosecutions for unlawfully, knowingly and wilfully refusing to perform civilian work contributing to the maintenance of the national health, safety and interest in lieu of induction into the Armed Forces of the United States.

The defendants, Harry Lebherz, Lucian J. Slirzewski, Charles W. Erlenmeyer and George David Passione, Jr., were separately indicted and charged with violating Title 50 U.S.C.A.Appendix, § 462.

In each case the defendant had been ordered to report for civilian work but had refused, asserting these civilian work orders to be unconstitutional as violative

of the 13th Amendment to the Constitution of the United States, and asserting further that he was a minister within the appropriate Selective Service Classification and that resultingly he was not liable for service of any kind but in fact should have been given an exempt classification (1V–D). Coexistent with this latter assertion is, of course, the claim that the Selective Service board involved in the particular classification was arbitrary in classifying him a conscientious objector and not a minister, and therefore acted contrary to law.

Title 50 U.S.C.A.Appendix, § 456(j), provides in part as follows:

" * * * Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, * * * if he is found to be conscientiously opposed to participation in * * * noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) (section 454(b) of this Appendix) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate * * *."

In accordance with the statute, Section 1660.1 of the Selective Service Regulations was promulgated, which defines civilian work in lieu of induction into the Armed Forces. This section, which will be quoted later, provides generally that any civilian work which contributes to the "maintenance of the national health, safety, or interest" is appropriate if it is employment "by a nonprofit organization, association, or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the public health or welfare * * *." Of these four defendants, Slirzewski and Erlenmeyer were directed to report to state

hospitals, while defendants Passione and Lebherz were assigned to county hospitals.

Each of those defendants was separately tried and each waived his right to trial by jury as provided by Rule 23(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. Additionally, it was stipulated by counsel, with the consent of each defendant, that the draft board file was to be considered authentic and that photostatic copies could be substituted therefor in evidence. It was also agreed that each defendant failed to comply with the civilian work order.

At the outset this court shall consider each factual situation separately. There will then be a general discussion of the applicable law as this court finds it, since the legal questions involved in each case are the same.

I.

Harry Lebherz was classified I–O (conscientious objector) by the State Appeal Board on May 27, 1952. He accordingly was directed by Local Board #14 with which he was registered, to report for assignment to hospital work at the Essex County Sanatorium, Verona, New Jersey, on September 8, 1953. This he refused to do on the ground that he properly should have been classified IV–D, a minister, and thus was not subject to the provisions of the Selective Service Act with respect to conscientious objectors.

Counsel agreed that Lebherz took all the appeals that were available to him under the Selective Service System, and exhausted and completed all his administrative remedies prior to receiving the order to report for assignment to civilian work.

Counsel for Lebherz argues that he should be acquitted for the following reasons:

"1. The denial of his claim for exemption as a minister of religion by the draft board is without basis in fact, arbitrary, capricious and contrary to law.

"2. He was denied procedural due process by the local draft board in that it failed to reopen his clas-

sification and/or advise him that the information he submitted did not warrant the reopening of his classification, contrary to Section 1625.4 of the Selective Service Regulations."

The validity of the order to report for assignment to civilian work is also contested on constitutional grounds and because of alleged variance between the statutes and the order issued thereunder. This will be discussed later in connection with the other three defendants.

In order to determine the first two contentions of the defendant, the Selective Service System file must be analyzed. In his classification questionnaire of October 2, 1950 the defendant stated that he had been a minister of Jehovah's Witnesses since August, 1943. He stated further that he had been ordained according to the tenets of that faith and requested a IV–D classification (ministerial). The questionnaire also reveals his employment as a leather seasoner working 40 hours a week at an average weekly compensation of $53. On October 9, 1950 Lebherz filed SSS Form 150, the Special Form for Conscientious Objector. He added to this form the following notation:

"Note:

I have filled this form out Not as as conscientious objector, but have done so in order to further give you proof on my standing concerning participation in warfare and my ministerial status."

It would appear that Mr. Lebherz filled out this form primarily to assert his ministerial status. This Form 150 contains information furnished by the defendant showing the defendant's parents to be Jehovah's Witnesses, and alleging activity by him in furthering the teachings of his religion. The defendant also stated that he was a leather worker but that this employment did not in any way hinder his "ministerial work." On May 1, 1951 the local board classified Lebherz I–A. On May 11, 1951 the local board received a letter from the registrant ask-

ing, in effect, for a reconsideration of his classification. The board refused to change the classification and so notified the defendant. It also informed him that the matter would be submitted to an appeal board after his physical examination was taken. On October 17, 1951 the defendant's file was forwarded to the State Appeal Board. He personally appeared, on February 14, 1952, before a Department of Justice hearing officer. Subsequent to this interview the State Appeal Board classified Lebherz I–O. The defendant appeared before the local board again on November 18, 1952, as an effort was made to reach an agreement with him as to appropriate civilian work in lieu of military service. No agreement having been reached, Local Board #14 ordered him to report to the Essex County Sanatorium.

We may at this juncture dispose of the second of the defendant's contentions which alleges a procedural violation of due process in that the defendant was not advised that the information he submitted to his local board did not warrant the reopening of his classification after he was classified I–A by the local board, in violation of 1625.4 of the Selective Service Regulations. We do not find this to be the case. The defendant was properly advised after he wrote the local board. Moreover, he was granted an appeal by the local board and was reclassified I–O by the State Appeal Board. He was properly informed of this new classification.

The problem now, in so far as Lebherz is concerned, relates to whether or not in fact he was entitled to a ministerial classification, and whether the work order directing him to the Essex County Sanatorium was constitutional, or was not in accord with the provisions of the regulations concerning assignment to civilian work.

## II.

In his classification questionnaire (Form #100) filed with Local Board #40 on July 20, 1949, the defendant, Lucian J. Slirzewski, stated that he was a minister and claimed exemption as

such. The form also reveals that he was working as a laborer, packing tile, 40 hours per week. At that time he was classified I–A. Thereafter he made application to the board for a personal hearing, which was granted on February 26, 1951. At the hearing it developed that the defendant had terminated his secular employment and was being supported by his parents. The local board continued him in I–A classification. Later, at Slirzewski's request, the file was forwarded to the State Appeal Board and on October 29, 1951 he was reclassified I–O. In this file is a report from the Department of Justice hearing officer who conferred with the defendant on May 11, 1951. The officer found that Slirzewski was working 40 hours per week as a carpenter for a Somerville contractor. As a result of the appeal classification Local Board #40 addressed to the defendant Form #152, Special Report for Class I–O Registrants. This form was filed by him on October 9, 1952. It indicated that at that time he was still devoting full time to secular employment. The file further reveals that on October 24, 1952 Slirzewski wrote the local board indicating that he was compelled to reject all types of civilian work in lieu of induction because it interfered with his ministry work. The board was further advised of his intention to enter the full-time ministry as soon as possible. On November 10, 1952 the defendant appeared before the local board at a hearing called pursuant to 32 C.F.R. 1660.20 in an attempt to arrive at a satisfactory civilian work assignment. It appears that at this particular time Mr. Slirzewski was working 10 hours a day, five to six days a week, at the Lincoln Mercury plant in Metuchen, N. J. The record reveals that the defendant personally appeared at the local board on November 17, 1952 and filed a statement refusing to accept civilian work. The file was forwarded to State headquarters on November 18, 1952. On April 16, 1953 the file was returned to the local board with a direction that a personal appearance should be granted the registrant in conformity with his request contained in a letter dated November 7, 1951. On April 20, 1953, in response to a notice from the board, registrant personally appeared for a hearing and was continued in Class I–O. On May 22, 1953, in answer to a letter from the board submitting three types of civilian work in lieu of induction, registrant wrote a letter, received by the board on May 25th, rejecting all types of civilian work.

On June 29, 1953 the defendant again appeared before the local board at its request, and it was discovered that he was employed full-time by Eastern Motor Express, Inc., earning $65 per week, notwithstanding previous advice to the board that he would enter the full-time ministry on January 1, 1953. The defendant was eventually ordered to report for civilian work on September 21, 1953. He reported to his local board on October 2, 1953 but refused to report to the assigned work at New Jersey State Hospital, Greystone Park, N. J.

It was adduced at the trial that the defendant had requested on November 7, 1951 a personal hearing before the local board as a result of his reclassification from IV–E to I–O. The local board notified Slirzewski that the prior IV–E classification had been discontinued and that conscientious objectors were being classified I–O. Defense counsel argued that the local board's failure to grant the request for a personal hearing constituted a deprivation of procedural due process, thereby invalidating all subsequent proceedings. This contention seems to be unfounded. The file reveals that this hearing was eventually granted on April 20, 1953. The defendant appeared personally at that time and the board properly considered the matter. On April 21, 1953 there was mailed to the defendant Form #110, Notice of Classification. From this classification (I–O) no appeal was taken. The aforestated procedure with regard to assignment of conscientious objectors to civilian work was then taken by the board.

The facts here show a great deal of secular employment by the defendant.

**450**

Employment which was consistently full-time.

In addition to the constitutional issue there remains for determination whether or not the board acted contrary to law in denying Slirzewski a ministerial exemption.

### III.

Charles W. Erlenmeyer was classified I–O by his appeal board on May 26, 1952 and was ordered by Local Board #17, with which he was registered, to report for institutional work at the New Jersey State Hospital at Greystone Park, New Jersey, on August 27, 1953. This he refused to do.

An examination of Mr. Erlenmeyer's classification questionnaire (Form #100) reveals that he stated that on August 9, 1942 he had been ordained as a minister of religion of Jehovah's Witnesses and claimed exemption as such. He also stated that he was working as an elevator serviceman twenty-five hours a week. It appears that this questionnaire was filed on March 6, 1951. At that time he was classified III–A.

Form #150, Special Form for Conscientious Objectors, was sent to the registrant and was filled out and filed with the local board on April 16, 1951. This showed that he was still performing the same secular work, and his classification as III–A was continued. This III–A classification was then appealed to the State Appeal Board. Pursuant to Regulation 1626.25 Mr. Erlenmeyer received a hearing before the Department of Justice hearing officer on January 29, 1952. At this date it appears the defendant was working 7½ hours per day, five days a week, for the Calco Chemical Co. in Bound Brook, N. J. The hearing officer recommended that the defendant be classified as I–O, a conscientious objector, although he also stated that in his opinion the defendant should be regarded as a minister.

On August 26, 1952 the registrant signed Form #152, Special Report for Class I–O Registrants. The report reveals that Erlenmeyer was working on the assembly line at the Ford Motor Co. in Metuchen, N. J. The form further reveals a continuous period of full-time secular employment for this defendant, commencing on October 28, 1949 and running up to the date when the report was completed.

On October 6, 1952 a hearing was held by the local board, in accordance with Regulation 1660.20, at which the defendant personally appeared. It was found that the defendant was still working full-time to clear up his financial affairs.

The defendant wrote letters to the board on October 20, 1952 and on April 30, 1953; these letters showed no change in his previous status.

The local board held another hearing on May 18, 1953, and it was revealed that Erlenmeyer was still working 40 hours per week at the Ford Motor Company. On August 17, 1953 the registrant was ordered by the local board to report to it on August 27, 1953 for assignment to institutional work at the New Jersey State Hospital at Greystone Park, N. J. He reported but refused to accept the work.

The defendant's file reveals he was employed in the main on a full-time basis in secular employment from the date he filed his Form #100 up until ordered to report for civilian work.

The defendant argues that the denial of his claim for exemption as a minister of religion by the Appeal Board is without basis in fact, arbitrary, capricious and contrary to law. It appears that the Appeal Board on June 18, 1951 determined that defendant should not be classified IV–D. At that time he was employed in secular work as an elevator serviceman, working 25 hours per week, and the Appeal Board classified him as a conscientious objector (I–O). The Appeal Board had requested an advisory recommendation from the Department of Justice, as provided for in paragraph 1626.25 of Regulations, with the result above indicated. We must, therefore, re-

solve whether there was a basis in fact for this classification given, in addition to the constitutional issue.

## IV.

George David Passione, Jr. was classified 1–O on November 6, 1951. He was ultimately indicted for failing to report on November 2, 1953 for assignment to civilian work at the Essex County Overbrook Hospital.

Defendant filed his questionnaire (Form #100) on February 27, 1951, and was refused exemption as a minister and classified as a conscientious objector (IV–E). He was employed 40 hours per week at the Wright Aeronautical Plant during this period. On September 25, 1952 he wrote the local board that since February, 1952 he had been engaged in full-time ministry work requiring 25 hours per week, or 100 hours a month. He requested another hearing before the board so as to press his claim to a IV–D classification. He was granted a personal hearing on October 7, 1952, at which time it appeared he was working 20–24 hours per week in a delicatessen at an hourly salary of $1.00; he was spending 25 hours per week in Bible study and preaching. The board still felt a I–O classification (formerly IV–E) was appropriate. Later, on December 16, 1952, the defendant again appeared before his local board, pursuant to Regulation 1660.20 which directs a local board hearing in an effort to find suitable civilian work for registrants classified I–O. At this December 16th date it again appeared that the defendant was working 24 hours a week in a delicatessen and spending 25 hours per week in ministerial pursuits.

Exclusive of the argument as to the constitutionality of the work orders, the defendant maintains that the uncontradicted evidence in the draft file shows that the defendant pursued his ministry as his vocation and that therefore the denial of a ministry exemption is arbitrary, capricious and without basis in fact.

With these facts now in mind the court may proceed to the legal questions involved.

One of the two principal issues before us is whether there was a basis in fact for denying claims to ministerial exemptions under § 6(g) of the Universal Military Training and Service Act, 62 Stat. 611, 50 U.S.C.A.Appendix, § 456(g).

Section 6(g) is the source of the ministerial exemption. It provides, in pertinent part, that "Regular or duly ordained ministers of religion, as defined in this title * * * shall be exempt from training and service (but not from registration) under this title." Section 16 (g), 50 U.S.C.A.Appendix, § 466(g), embodies Congress' definition of a "regular or duly ordained minister of religion."

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does

not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

Registrants who satisfy this definition are entitled to be classified IV–D. 32 C.F.R. § 1622.43.

■ The feature that must be recognized at the outset is that The Universal Military Training and Service Act does not permit direct judicial review of Selective Service classification orders. Rather the Act provides that classification orders by Selective Service authorities shall be "final." Dickinson v. U. S., 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. The only time the question of jurisdiction of the local board is reached is when there is no basis in fact for the classification given the registrant. So long as the decisions of the local boards are made in comformity with the regulations, they are final even though they may be erroneous. Estep v. U. S., 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. The instant cases, in so far as the question of ministerial status is concerned, must be decided in accordance with the determination of the Supreme Court in the Dickinson case above cited. In that case Mr. Justice Clark speaking for the majority of the court, used the following language [346 U.S. 389, 74 S.Ct. 156]:

"The ministerial exemption, as was pointed out in the Senate Report accompanying the 1948 Act, 'is a narrow one, intended for the leaders of the various religious faiths and not for the members generally.' St. Rep. No. 1268, 80th Cong. 2d Sess. 13. Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. Cf. Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59. On the other hand, a legitimate minister cannot be, for the purposes of the Act, unfrocked simply because all the members of his sect base an exemption claim on the dogma of its faith. That would leave a congregation without a cleric. Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation.' And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption." See 32 C.F.R. § 1622.1 (c).

In passing, the query may well be posed in view of this quotation, whether the belief held by Jehovah's Witnesses that they are all ministers by virtue of the fact that they are members of that sect, makes them all "leaders" therein with no "members generally."

■■ Analyzing the cases sub judice, in the light of this opinion, it is believed that none of the defendants meets the statutory criteria. The facts as they were found, reveal, at the very best, preaching and teaching or Bible reading, no more than half-time in relation to secular work. It certainly does not appear to be each defendant's vocation in the sense in which that word is used in the statute and in court decisions. True, the statutory definition of a "regular or duly ordained minister" does not preclude all secular employment. However, there is a definite, factual basis afforded each draft board in each case before us to supply a sufficient basis for the denial of

a ministerial classification. The Dickinson case merely held that one who supports himself by *five hours* (emphasis supplied) of secular work each week as against 150 hours monthly devoted to religious activity, places himself prima facie within the statutory exemption, and a dismissal of such a registrant's claim to exemption without affirmative evidence to support such a finding, is contrary to the intent and purpose of the Act.

 There is no dispute here as to the evidence presented by each defendant to substantiate his claim to being a minister of his particular faith. Each defendant has failed, however, to establish such a course of conduct as to fulfill the requirements needed to establish a right to exemption as a minister. Moreover, it must be remembered that only when there is a classification which is arbitrary and capricious can the courts make determinations. The courts do not weigh the evidence and then decide; they may only determine whether there is a basis in fact for the draft board's classification. The local board bears the initial responsibility for resolving the conflict. The courts will insist only that there be some proof that is incompatible with the registrant's proof of his status as a minister entitled to exemption.

In each of these cases there is a warrantable basis for the decision of the board, which makes that decision neither arbitrary nor capricious.

The defendants next argue that the orders to report for civilian work at New Jersey State and County institutions, and sections 1660.1 and 1660.20 of the Selective Service Regulations are in conflict with § 456(j), 50 U.S.C.A.Appendix, of The Universal Military Training and Service Act because the civilian work, as provided for in the regulations, is not *national work* (emphasis supplied) as required by the Act. Along this same line it is urged by the defendants that the Act, as construed and applied by the regulations and the orders, calls for a nonfederal labor draft for the performance of services that are not exceptional or related to the national defense, in violation of the 13th Amendment to the United States Constitution.

First of all, § 456(j) of the Act, 50 U.S.C.A.Appendix, as quoted previously, provides that conscientious objectors to combatant training and service shall be ordered to perform civilian work "contributing to the *maintenance* of the *national* health, safety, or interest" (emphasis supplied). By virtue of this statute § 1660.1 and § 1660.20 were formulated. They provide:

"§ 1660.1 Definition of appropriate civilian work. (a) the types of employment which may be considered under the provisions of sections 6(j) of title I of the Universal Military Training and Service Act, as amended, to be civilian work contributing to the maintenance of the national health, safety, or interest, and appropriate to be performed in lieu of induction into the armed forces by registrants who have been classified in Class I–O shall be limited to the following:

"(1) Employment by the United States Government, or by a State, Territory, or possession of the United States or by a political subdivision thereof, or by the District of Columbia.

"(2) Employment by a nonprofit organization, association, or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the public health or welfare, including educational and scientific activities in support thereof, when such activity or program is not principally for the benefit of the members of such organization, association, or corporation, or for increasing the membership thereof.

"(b) Except as provided in paragraph (a) (2) of this section, work in private employment shall not be considered to be appropriate civilian

work to be performed in lieu of induction into the armed forces by registrants who have been classified in Class I–O.

"§ 1660.20 Determination of type of civilian work to be performed and order by the local board to perform such work. (a) When a registrant in Class I–O is found acceptable for service after his armed forces physical examination or when such a registrant has failed to report for or to submit to armed forces physical examination, he shall, within ten days after notice of acceptability is mailed to him by the local board or within ten days after he has failed to report for or submit to armed forces physical examination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in § 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the armed forces. If the local board deems any one of these types of work to be appropriate, it will order the registrant to perform such work, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified ·in Class I–O, unless he has volunteered for such work.

"(b) If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in § 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. The registrant, within ten days after such letter is mailed to him by the local board, shall file with the board a statement that he either offers to perform one of the types of work submitted by the board, or that he does not offer to perform any of such types of work. If the registrant offers to perform any one of the three types of work, he shall be ordered by the local board to perform such work in lieu of induction, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work.

"(c) If the local board and the registrant are unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching an agreement. The local board shall mail to the registrant a notice of the time and place of this meeting at least 10 days before the date of the meeting. If agreement is reached at this meeting, the registrant shall be ordered by the local board to perform work in lieu of induction in accordance with such agreement, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work.

"(d) If, after the meeting referred to in paragraph (c) of this section, the local board and the registrant are still unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work

contributing to the maintenance of the national health, safety or interest as defined in § 1660.1 which it deems appropriate, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I–O, unless he has volunteered for such work."

██ The defendants argue that the whole intent of the Act and the regulations issued in conformity therewith is to confine the work, permitted to be ordered, to work done in national institutions. With this interpretation this court cannot agree. The sole limitation placed on the work to be done is that it contribute to the *"maintenance* (emphasis supplied) of the national health, safety, or interest as the local board may deem appropriate." 50 U.S.C.A.Appendix, § 456. There is no requirement of "national" work here. Only "civilian work contributing to the maintenance of the national health." It is of national importance that a sick person be restored to mental or physical health, whether this be accomplished in a state, county, or federal hospital.

The work done to aid in restoration to health, mental or physical, of residents or citizens of the United States is incontestably of importance to the United States and directly relates to the maintenance of national health. This nation is a union of states, indissolubly bound together. That which affects conditions of health and well-being in each state has an effect on the country as a whole. None of our citizenry is so isolated from his fellows that his fate is entirely unrelated to theirs. Though not determinative, the interest of the sovereign in the institutions involved here is indicated by the assistance given them by the Federal Government and by the fact that patients are received at the behest of federal agencies and there maintained by them.

██ After careful consideration it is believed that the contention of the defense as to this point must be rejected. The work orders are valid and in furtherance of our nation's interest. Congress has the power to compel any one to perform military service in spite of religious conviction. Brooks v. United States, 2 Cir., 147 F.2d 134. It must naturally follow that it is only through congressional grace that one is permitted to do civilian work. Roodenko v. United States, 10 Cir., 147 F.2d 752.

██ Moreover, the entire history and purpose of the 13th Amendment indicates it was neither intended to reduce our people's duties nor to deprive our Government of its war powers, nor its power to provide for the national defense. Butler v. Perry, 240 U.S. 328, 332–333, 36 S.Ct. 258, 60 L.Ed. 672. A draftee in the army is not forced into involuntary servitude in violation of the Amendment. Arver v. United States, 245 U.S. 366, 390, 38 S.Ct. 159, 62 L.Ed. 349. A man who is classified a conscientious · objector through legislative grace, Dickinson v. United States, supra, may not be allowed to prevail in an argument based on alleged rights under the same Amendment, or the specious pretext that service in a state or county hospital constitutes involuntary servitude.

██ In view of the foregoing this court is of the opinion that neither the regulations nor the specific orders issued thereunder are violative of the statute and that there is no violation of the constitutional guaranty contained in the 13th Amendment as alleged. The court concludes that each defendant is guilty as charged.

Let this constitute findings of fact and conclusions of law.

Let a judgment of guilty be entered in each case.