**UNITED STATES of America,
Plaintiff,**

**v.**

**David KAHL, Defendant.**

**No. 34101.**

United States District Court
E. D. Michigan, S. D.

May 3, 1956.

Donald F. Welday, Jr., Asst. U. S.
Atty., Detroit, Mich., for plaintiff.

Harold E. Leithauser, Detroit, Mich.,
for defendant.

PICARD, District Judge.

Defendant was tried and convicted by this court on May 7, 1954 for refusal and failure to report for civilian work at the Kalamazoo State Hospital after being denied exemption from military service as a duly ordained minister and classified as a conscientious objector. Subsequently his conviction was set aside, July 27, 1954 but further steps were held in abeyance since the parties indicated that all facts could be stipulated and the case re-submitted on briefs. Accordingly, the briefs and stipulation have been filed, an oral argument afforded and the case is again before this court.

### Findings of Fact

Defendant filed his Classification Questionnaire August 23, 1950 stating therein that he was, and had been, an ordained minister of the Watchtower Bible and Tract Society since 1948. He also stated that he was conscientiously opposed to participation in war because of his religious belief. On September 11, 1950 defendant was classified 1-A, to-wit, "available for unlimited military service."

This classification is not important, because subsequent thereto, and prior to his indictment, his classification was changed to 1-O after defendant had made four personal appearances before his local board. At the first of those appearances, on October 23, 1950, Kahl admitted to the board that he was not ordained (although he claimed he was in his questionnaire) nor authorized to perform marriage ceremonies or to officiate at funerals but merely worked as a part-time preacher. He then stated that in addition to time spent preaching he worked in his father's store an average of 20 to 25 hours a week. However, when he appeared before the board on April 23, 1951, he stated that since his previous appearance he had become a full time ordained minister with authority to perform marriages, officiate at funerals, etc., giving 100 hours a month or perhaps a little less for Jehovah Witnesses. He admitted that he was also working

secularly but insisted that it was only part-time, to-wit, 4 hours per day 7 days a week, as a common laborer breaking up sidewalks.

There is some testimony in the record which petitioner's counsel interprets as a statement by petitioner to the board in August 1952 that he had temporarily cut down on his secular work and was devoting 30 to 35 hours additional to his ministry. This court does not place the same interpretation on this part of the record but even if petitioner's counsel is correct—it was only temporary and admittedly petitioner still works in his parent's store between 20 and 30 hours each week.

To substantiate his claims, defendant presented to the board the following documentary evidence:

(1) A certificate of ordination signed under oath by the Superintendent of Ministers and Evangelists of the Watchtower Bible and Tract Society which made him a duly ordained minister according to the rules of that Society;

(2) Affidavits of numerous persons that defendant was their minister; and

(3) That since he had become an ordained minister his part-time secular work was incidental and carried on only for the purposes of providing himself with the bare necessities of life.

On the other hand before the board was this information:

(1) Defendant was devoting not more than 100 hours to the Jehovah Witnesses each month, which was about the same time he claimed he was devoting to the Society when he was just a member and before he became a duly ordained minister;

(2) That defendant was engaged in secular work 20 to 30 hours each week (totalling 90 to 135 hours each month) for which he was paid. In other words, he was devoting as much time (if not more) to his secular work as to his ministry;

(3) That he was still earning secularly between $1040.00 and $1560.00 a year

while receiving nothing from his Jehovah's Witness ministerial work;

(4) That while the board was evidently willing to admit that under the rules of the Society his status from member to duly ordained minister might have changed to some extent, nevertheless the fact was also before the board that he had claimed the same exemption and status when he appeared October 23, 1950—six months previous to his appearance April 23, 1951; and

(5) That a former school teacher of defendant indicated that before he ever claimed to have become a member of the Watchtower Bible and Tract Society she had found him to be very inattentive and somewhat irresponsible.

Conclusions of Law

There were two issues before the board

(1) Was he a full time minister doing part-time secular work or was he a duly ordained minister who "performed part-time or half-time, occasionally or irregularly," Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 156, 98 L.Ed. 132, services as a minister, and

(2) Had defendant borne the burden of clearly establishing a right to the exemption he claimed?

 But the issue before this court is, was there a basis in fact for the board's classification it gave registrant?

In arriving at our conclusion, let us first examine the Selective Service Act of 1948, Title 50 U.S.C.A.Appendix, § 456(g) which exempts regular or duly ordained ministers of religion from training and service.

Section 466(g) (1) defines a duly ordained minister and subsections (2) and (3) respectively define what is meant by a "'regular minister of religion'", and a "'regularly or duly ordained minister of religion'". And according to Section 456(g) only the latter is exempt. Thus in order to be entitled to ministerial exemption a person must be (a) duly ordained, and (b) teach and preach the principles of religion and administer the ordinances of public worship as embodied by his creed, as a vocation. If he satisfied the requirements of one but not the other he is not entitled to the exemption.

In the case at bar, defendant bases his claim for classification as a duly ordained minister chiefly on the case of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, where registrant had presented uncontradicted prima facie evidence that entitled him to ministerial exemption.

This court construes that case differently and recalls that the court in 346 U.S. at page 395, 74 S.Ct. at page 157, said

" * * * the selective service registrant bears the burden of clearly establishing a right to the exemption."

and on the same page the court added

"Preaching and teaching the principles of one's sect, *if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed.* They must, as the statute reads, comprise the registrant's 'vocation'." (Emphasis ours.)

Finally, 346 U.S. on page 396, 74 S.Ct on page 157 the court said

"However, the courts may properly insist that (referring to board's classification) there be some proof that is incompatible with the registrant's proof of exemption." (Within parenthesis supplied.)

In the light of these statements by our Supreme Court, we must consider the facts before the board at the time it made its decision.

Let us therefore note these distinctions:

In Dickinson v. United States, supra, the registrant formerly worked 40 hours a week and when he failed to be classified as a duly ordained minister with those hours he left that job and at the time of the final 1–A classification by the board he was only working secularly

5 hours a week. He was in fact a co-ordinator of Jehovah Witness ministers.

In the case at bar the registrant, while changing his status from "member" to " ' "duly ordained minister" ' " as in Dickinson v. United States, supra, did not change his secular work at all. He was working the same number of hours after he became a duly ordained minister that he was before. Evidently the Supreme Court in the Dickinson case placed emphasis upon this difference between the two types of cases because it used this rather significant language in 346 U.S. on page 392, 74 S.Ct. on page 155:

> " * * * Dickinson *voluntarily* left his 40-hour-a-week job as a radio repairman * * *." (Emphasis ours.)

Here the defendant changed neither the hours per week, nor the work that he was doing, which at a minimum, was 20 hours a week or 4 hours a day 7 days a week, 28 hours per week. He didn't leave his work voluntarily or involuntarily.

Furthermore, in the Dickinson case it appeared that these were among the many activities of Dickinson after he became a duly ordained minister:

> "At that time he dedicated approximately 100 hours each month to actual pioneer missionary work—delivering public sermons, door-to-door preaching, conducting home Bible studies. In the remaining 50 hours devoted to religious activities each month, Dickinson studied, planned sermons and discourses, and wrote letters connected with his work. A substantial portion of this time was spent conducting three to four meetings each week of the 'Company' or congregation at a public hall in Coalinga. Dickinson arranged for and presided over these meetings, usually delivering discourses at them. He also instructed prospective ministers in the proper delivery of sermons at the 'Company's' Theocratic Ministry School. Dickinson received no salary for his missionary or company servant work.

He lived on $35 a month earned by a weekly average of five hours of radio repair work. This modest income, a low of $15–17.50 a month rental for an apartment, self-performance of household tasks, and invitations to various private homes enabled Dickinson to subsist."

The above is a far-cry from any showing made for this registrant who lives at home with his parents, who, fortunately are engaged in the grocery business. There was no question of this registrant being able to subsist.

Defendant also relies on Brown v. United States, 9 Cir., 216 F.2d 258, a court which, judging from the wording of the opinion, arrived at its conclusions reluctantly and only because its case appeared to be on all fours with Dickinson v. United States, supra. In the Brown case registrant was also engaged at only part-time secular work (the number of hours is not given) and unfortunately in that case the board classified Brown as 1–A. In the case at bar the board recognized that the registrant was a conscientious objector and classified him as 1–O which classification only means "work of national importance." 1–A put Brown in unlimited military service and in the Brown case there was absolutely no basis in fact for putting him into that classification.

Reliance is also made by defendant on Hacker v. United States, 9 Cir., 215 F.2d 575, where registrant worked 15 hours per week driving a school bus before and after school, during about 9 months of the year. He earned a total of $640. Compare that with this registrant who earned at least $1,040 to $1,-560 each year and worked 20 to 30 hours each week.

In United States ex rel. Arpaia v. Alexander, D.C., 68 F.Supp. 820, the question was not whether petitioner was a duly ordained minister of Jehovah Witnesses but whether the board should have classified him as 1–A. This was discussed but not passed upon.

In United States v. Lowman, D.C., 117 F.Supp. 595, again the question is not

whether petitioner was a duly ordained minister but whether he was a conscientious objector and a minister not duly ordained. In that case the board undoubtedly acted frivolously. It didn't even follow the recommendation of its own Hearing Officer. No doubt the petitioner was a conscientious objector as well as a minister of religion. There was no proof to the contrary and nothing to support defendant's 1–A classification.

We must always remember that in the case at bar the board merely refused to accept petitioner as a duly ordained minister acting as such. It did recognize that he was a conscientious objector as well as a minister of religion but not actively engaged as a duly ordained minister working at his avocation within the exemption meaning of the draft law.

██ ██ This court further directs attention to the fact that the burden of proof is on the registrant and that he must, according to Dickinson v. United States, supra, devote more than half of his time to his work as a duly ordained minister. Therefore, we believe and hold that registrant did not discharge his burden of proof and that there was basis in fact for the classification made by his board. To hold otherwise would be to expose the Selective Service Act to a most weird interpretation simply on the theory that the moment registrant becomes a duly ordained minister under the rules of the Society he could work secularly 40 hours a week and still claim his exemption if he only made enough money in those 40 hours to pay for his bare necessities of life. Under such an interpretation, where is the limit to be placed?

██ Finally, we believe that the court in Dickinson v. United States, supra, clearly holds that registrant shall be a duly ordained minister working at his regular duties more than half time and that his secular work must be somewhat less than his ministerial duties. He must be a full time minister who perhaps, to subsist and because of his zeal and enthusiasm and that of his followers, calls

for a sacrifice on his part in order to live. But that he may not be regularly employed longer at secular work or part-time work than the time devoted by him to his ministry.

In arriving at our conclusion we are also mindful of this admonition in the Dickinson case, found in 346 U.S. at page 394, 74 S.Ct. at page 156 quoting from Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567:

"'* * * the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant.'"

Since the registrant himself admits that he worked at least 4 hours a day 7 days a week in the grocery store of his father we believe that we are safe in assuming that the actual time that he did work wasn't any less than that. In other words, it is to his advantage to be working a small number of hours in his father's store, and it would be difficult to prove that he worked less or that he didn't work more. Local boards have not the wherewithal to put detectives on each registrant to find out whether or not the facts as given to it are true so when the registrant himself admits that he is working 4 hours a day at secular jobs it is safe to assume that he isn't giving himself any the worst of it. As said in United States ex rel. Arpaia v. Alexander, supra, 68 F.Supp. at page 822, quoting from United States ex rel. Hull v. Stalter, 7 Cir., 1945, 151 F.2d 633 at page 635.

"'A registrant's classification should be determined by the realities of the situation, not merely by what he professes. A registrant is not entitled to exemption merely because he professes to be a minister,

but he is entitled to such exemption if his work brings him within that classification.' "

We consider two other points advanced by defendant at the recent trial before this court. That he was denied due process of law because

(a) The board failed to post the name of a legal advisor in the local board office as provided by Section 1604.41 of the Selective Service Regulations; and

(b) A member of the armed forces was present when the local board discussed the prospective job for defendant.

Both contentions are without merit. No evidence has been introduced which shows that failure to post the name of a legal advisor prejudiced defendant. In this circuit such showing must be made. Rowton v. United States, 6 Cir., 229 F.2d 421.

Nor did the presence of military personnel at the time the board conducted a hearing to determine which civilian job defendant might accept violate his procedural rights. At that time his classification had been determined so that the presence of a member of the armed forces in no way affected the board's decision denying ministerial exemption. Neither has it been shown that had representatives of the military been barred from the hearing that defendant might have been assigned to a civilian job which he would have accepted. See United States v. Ransom, 7 Cir., 223 F.2d 15.

In this case also, the court itself attempted to learn whether any books were kept to verify some of the figures given by defendant, without avail. We met up with a stone wall. Nevertheless, while we cannot be entirely naive as to the registrant's claims in this case yet we have given him the benefit of all doubt. Still we cannot hold, under the circumstances, that there was no basis in fact for the classification as made.

We find defendant guilty.