**Richard Wayne FRANK, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 14787.**

United States Court of Appeals
Ninth Circuit.

June 25, 1956.

Rehearing Denied July 31, 1956.

J. B. Tietz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Cecil Hicks, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant was indicted and convicted of two counts of violation of the Universal Military Training and Service Act, Section 462, Title 50 U.S.C.A.Appendix.[1]

Appellant registered with the Selective Service System in 1948 at which time he claimed to be a minister and also a conscientious objector. He supplied data to show that he was a minister. He later filed SSS Form 150, Special Form for Conscientious Objector, and on September 20, 1949, was classified IV-E, the then designation of a conscientious objector. He did not appeal this classification.

On November 19, 1951, appellant was classified I-O, the classification given under the 1951 amendments to the Universal Military Training and Service Act, to a conscientious objector opposed to both combatant and noncombatant training and service. Under the I-O classification the registrant was subject to perform 24 months of civilian work contributing to the national health, safety, and interest.

1. June 24, 1948, c. 625, Tit. I, § 12, 62 Stat. 622.

He was on November 20, 1951, mailed notice of this I-O classification. On December 7, 1951, appellant personally appeared before a clerk of the Board and presented a letter requesting an appearance before the Board. We cite this letter in the margin.[2] He also at this time handed to the clerk a pamphlet which indicated that he was making a religious speech. At the trial appellant testified that he advised the clerk at the board that he received the notice late because it had gone to the wrong address. In the letter he filed with the clerk, he did not make any mention of receiving the notice of classification late nor did he assert that he was requesting a personal appearance within ten days of the *receipt* of the notice. On that date, the Board made a notation in appellant's file as follows:

"Reg. presented letter (in person) requesting personal appearance—appeal period had expired (12–1–51)—Board did not grant personal appearance. No change in status."

Later in December, 1951, the appellant notified the Board that he had been married in 1950 and that he had a change of employment and was now employed by Golden State Dairy as a milkman. Early in 1952, appellant was given a physical examination and found acceptable. October 23, 1952, appellant was mailed an Application of Volunteer for Civilian Work, but did not return it to the Board. In March, 1953, he was mailed a Special Report for Class I-O Registrants. He returned this report to the Board and offered to perform civilian work for Goodwill Industries. In the form he also stated that he had been employed as a milkman from January 1, 1949, to August 30, 1952, earning $80. per week, and that he had been employed as a roofer with a roofing contractor since September 1, 1952, earning $112. per week.

Further correspondence occurred between appellant and the Board relating to his placement in various Goodwill Industries throughout the State of California. Appellant told the Board that he would accept employment at Stockton, California, with the Goodwill Industries, but the Board was advised that appellant refused to work there because the wages were too low. Later appellant told the Board that he refused to work for Goodwill Industries at Oakland, California, or San Diego, California, also because of low wages. He also refused to consider employment at Mendocino State Hospital.

2. "December 6, 1951

"Local Draft Board No. 31
Contra Costa County
Martinez, California
Gentlemen:

"I have received my classification of 1–O.

"Even though I have not been graduated from a theological seminary, I feel that I should be entitled to a minister's classification of 4–D.

"A recent decision by the United States Court of Appeals in the 6th Circuit in the case of Niznik v. United States (Comodor v. United States), [184 F.2d 972].

"The court said that although the members of the draft board performed long, laborious, and patriotic duties, nevertheless, their ruling in this regard, that appellants were not entitled to classification as ministers of religion, was based not upon the evidence or information in appellants' files, or upon a belief in the truthfulness of the statements made by appellants, but upon the fact that they were members of Jehovah's Witnesses.

The regulation pertaining to ministerial classification in this case was plain.

"Disregard of this provision, and refusal to classify as a minister of religion solely on the ground that appellants were members of a religious sect and that they had not attended a religious seminary and had been regularly ordained, was arbitrary and contrary to the law and regulations. 'In classifying a registrant there shall be no discrimination for or against him because of his race, creed, or color, or because of his membership or activity in any labor, political, religious, or other organization. Each registrant shall receive equal and fair justice.' Section 623.1(c) of the Selective Service Regulations.

"I feel that in regard to this additional information that I would like to have a personal hearing before the board.

"Very sincerely yours,

/s/ R. W. Frank
R. W. Frank
5473 Clayton Road
Concord, California"

The Local Board then ordered appellant to report for civilian work with the Los Angeles County Department of Charities on February 23, 1954. Appellant reported on that date but refused to accept employment. He later told the Board by letter that he refused because he didn't like the hours, nor the days off, and that it would interfere with his preaching activities. The Board again ordered appellant to report for civilian work with the Los Angeles County Department of Charities on June 14, 1954, but he likewise refused to accept employment on June 18, 1954, when he appeared at the institution. Appellant Frank was ordered the second time to report to the Los Angeles County Department of Charities because, when first so ordered, the Board had ordered him to report directly to the institution rather than to the Local Board and then to the Institution. The prosecution followed. He was convicted on both counts and sentenced to the custody of the Attorney General on Count One for a period of four years, but was put on probation as to Count One provided that he perform civilian work contributing to the National Health, Safety, and Interest, for three years. He was given probation as to Count Two for two years to commence after his three-year probation on Count One had expired.

Appellant seeks a reversal here, first arguing that he was unfairly denied an appearance before the Local Board and/or an administrative appeal.

■ We initially note that the question whether or not the Board should have given appellant his minister classification, is not now before us. He did not appeal from his original classification and thus did not exhaust his administrative remedies. Williams v. United States, 9 Cir., 1953, 203 F.2d 85, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408.

Regulation 32 C.F.R. § 1624.1(a) (1951 Ed.) provides:

"Opportunity to Appear in Person.

"(a) Every registrant, after his classification is determined by the local board * * * shall have an opportunity to appear in person before the member or members of the Local Board designated for the purpose if he files a written request therefor within 10 days after the local board has mailed a Notice of Classification (SSS Form No. 110) to him. Such 10 day period may not be extended."

Cases have construed this 10-day limit as normally commencing when the notice is mailed, but if the notice is improperly addressed due to the board's fault then the 10-day period starts when the notice is received. Here appellant requested an appearance 17 days after it was mailed. Frank's statement that the notice was improperly addressed, could have been substantiated, if true, by the production of his notice of classification which, of course, bore a mailing address. He did not, either at the trial or to the Local Board, make any showing or claim that he had ever requested a personal appearance within the statutory period after receipt of the notice. He did not tell the clerk of the Board or include in the letter which he submitted any allegation that he was within the 10-day limit.

At the trial appellant testified as follows:

"For a while there they were sending my mail, addressing my mail to Clayton instead of Concord. My address was Clayton Road, Concord, and they were sending it to Clayton Road, Clayton; I don't know why. Before they corrected that it happened that the letter was a few days late."

If, in fact, his request for a personal appearance had been within the required time after actual receipt of the notice, it would seem that he would have claimed it directly, rather than through the indefinite statement quoted above.

■ The reclassification in November, 1951, in reality was not a change in

classification, but was merely a change in the symbol of the same classification in the designation of a conscientious objector, made to conform to a change in the law. Therefore, Frank suffered no prejudice since for two years he had acquiesced in this classification and did not originally appeal therefrom.

■ Appellant Frank argues that the Board could have waived the 10-day limit under Title 32 C.F.R. § 1625.2 (1951 Ed.) and the Board's decision not to so waive was arbitrary. We find no merit in this argument. The applicable regulation is found under the heading, "Appeal to Appeal Board" and requires that the registrant file with the Local Board a written notice of appeal within 10 days. Here, appellant did not file a written notice of appeal but merely requested a personal appearance. We find no error as to this point.

■ Next, appellant argues that he was denied due process because the Local Board did not have posted the names and addresses of Advisors to Registrants. We have previously held that the mere failure to appoint such advisors or the failure to post the names and addresses is not *per se* a denial of due process and that lack of due process exists only when substantial prejudice is shown. Uffelman v. United States, 9 Cir., 1956, 230 F.2d 297, and Kaline v. United States, 9 Cir., 1956, 235 F.2d 54. At the trial appellant testified that through 1951 he did not at any time ask for advice from anyone at the Board or ask anyone there where he could get advice. He also testified that later he asked the Board members where he could get advice and they referred him to a lady from the State Selective Service whom he consulted. From the record considered as a whole, we cannot say that appellant was prejudiced.

■ Next, appellant argues that he was denied due process when the Local Board refused to reopen, or to even consider reopening his classification. We hold against appellant on this point.

The regulations require that a request for reopening be in writing.[3] The only writing which was submitted to the Board was appellant's request for a personal appearance which we have quoted in footnote 2, supra. Nowhere in that writing is there a request for reopening. The letter does not assert that there is anything new to present to the Board but is clearly a request that the Board correct the classification upon the same facts which it was previously made. Apparently, at the same time, appellant submitted his request for a personal appearance he also handed to the Board a pamphlet which on one side contained the following:

"The Peoples' Greatest Need

What is that need?
Who can fulfill it? When?
Public address by
R. W. Frank

"Representative of Watchtower Society
"Sunday        December 2        6:30 P.M.
Kingdom Hall
63 West 7th St.
Pittsburg, Calif.

Welcome Good-Will Persons
"Free                                        Free"

On the reverse side of the pamphlet there contained a three-paragraph statement urging persons to subscribe to "Awake" magazine.

The letter that appellant submitted was not a request for reopening, and even if we combine the letter with the pamphlet it still does not constitute a written request for a reopening. There was nothing in the letter or pamphlet which would in any way lead the board to believe that appellant was requesting a reopening. The purpose of allowing a reopening of a registrant's classification is to enable the Board to consider new facts not previously considered which might require a new classification. Here, there was nothing new presented. This pamphlet does not in any way mean that

3. Title C.F.R. § 1625.2 (1951 Ed.).

the speaker is a minister. It only shows, if anything, that appellant is going to make a speech which might have a religious subject matter. We hold there was no request for reopening, and that there was not a denial of due process as to this point.

■■ Finally, appellant argues that the government has wholly failed to prove a violation of the Act and the regulations as charged in the indictment. Under this charge, appellant argues here that the first refusal to accept employment was waived by the Draft Board when they ordered him to report the second time. This point was not raised at the trial and we do not think it is a proper argument to make under the Point on Appeal under which appellant has placed it. In any event we find it without merit. Each refusal to report was a violation of the statute, for appellant was under a continuing duty to report for civilian employment contributing to the national health, safety, and interest, when ordered by the Board. United States v. Bendik, 2 Cir., 1955, 220 F.2d 249, 251.

Judgment affirmed.