**UNITED STATES of America**
v.
**Wallace Delaney MOHAMMED.**
No. 13096.

United States Court of Appeals
Seventh Circuit.
March 21, 1961.

Rehearing Denied May 1, 1961.

William R. Ming, Jr., George N. Leighton, Richard D. Gumbel, Jr., Ellis E. Reid, Chicago, Ill., for defendant-appellant.

Robert Tieken, U. S. Atty., S. John Templeton, Jr., Asst. U. S. Atty., Chicago, Ill., for appellee. John Peter Lulinski, Howard R. Kaufman, Asst. U. S. Attys., Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge, and MERCER, District Judge.

MERCER, District Judge.

Defendant was convicted at a trial without a jury of violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq., by reason of his refusal to report for civilian work as ordered by his local selective service board. He now appeals the judgment of conviction, asserting several contentions of error which principally hang from the common thread of his contention that he is now a minister of his religious sect.

Defendant is a Muslim, a devotee of the Islamic Religion. He registered with the local board in November, 1952. In his selective service questionnaire, filed with the local board in December, 1952, he claimed that he was a conscientious objector to participation in war. The local board classified him 1–A. As the result of an appeal, defendant was classified 1–O by the Illinois Appeal Board on May 9, 1955. Because of a procedural irregularity which preceded that classification, defendant's file was reconsidered by the appeal board and he was again given a 1–O classification on June 6, 1956.

The 1–O classification made defendant subject to induction, pursuant to order of the local board, for civilian work of national importance. Defendant raised no objection to the 1–O classification as he might have done when he was notified thereof on or about June 6, 1956. In-

stead, his dissension against the classification began on October 9, 1956,[1] at the earliest, and after the local board had begun processing his file for his induction into civilian work.

That dissension blossomed into a claim that defendant was a minister of his sect and entitled to exemption from the provisions of the Act. He defended the criminal charge upon that claim of exemption and his major contentions against the judgment on this appeal are related thereto.

A principal contention advanced by defendant for reversal of the judgment is that the order to report for civilian work is void because the local board failed to reopen defendant's classification and grant him a hearing upon his alleged claim of entitlement to the ministerial exemption. Before we consider that contention, and before we allude in detail to the historical background of defendant's indictment and conviction, we will dispose of a second major contention that the trial court erroneously excluded evidence offered by defendant in support of the merits of his claim of his ministerial status.

■■ The statutory provision making decisions of the local boards "final" precludes the courts from weighing the evidence to determine whether the classification given to a particular registrant was justified. "The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous." Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567. The court may interfere with the classification given to a registrant by a local board only if it finds that there is no basis in fact for the classification given, or if it finds that the board acted so arbitrarily and capriciously that due process of law is denied. Winter v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Estep v. United States, supra. "The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." Estep v. United States, supra, 327 U.S. at page 122–23, 66 S.Ct. at page 427.

■■ The courts may not sit as super draft boards, substituting their judgment on the weight of evidence for the judgment of the designated selective service agencies. Witmer v. United States, supra at 348 U.S. at pages 380–381, 75 S.Ct. 392. Where the claim is made that a particular classification was denied by the local board, it is not the function of the court to determine whether the registrant is, in fact, entitled to the classification which he claims. The court's function, in that respect, is limited to a review of the file upon which the selective service agencies acted to determine whether a basis in fact exists for the classification given. Estep v. U. S., supra. The court properly excluded the evidence which was relevant only to the merits of defendant's claim of ministerial status. See Smith v. United States, 4 Cir., 157 F.2d 176, certiorari denied 329 U.S. 776, 67 S.Ct. 189, 91 L.Ed. 666, in which the conviction of a registrant who claimed ministerial status was reversed on the ground, inter alia, that the trial judge had permitted the issue of the defendant's status as a minister to be tried before the jury.

Defendant's principal contention is that he was denied due process of law and procedural fairness because, as he alleges, the local board failed to reopen his classification and to consider his claim of entitlement to a ministerial exemption. The merits of that contention must be considered upon the basis of the historical background of defendant's asserted claim of exemption as reflected in his selective service file.

In his classification questionnaire, submitted to his local board in December, 1952, defendant struck out the section relative to ministers of religion. He claimed that he was a conscientious ob-

---

1. See note 8, infra.

jector to participation in war, a claim which was recognized by the selective service agencies when defendant was given a 1–O classification by the appeal board on June 6, 1956.

Defendant's file was returned to the local board contemporaneously with the appeal board order of June 6, 1956. On June 11, 1956, the local board wrote to defendant requesting that he designate three types of civilian work which he was willing and qualified to do. SSS Form 152 was enclosed with that letter for defendant to complete and return to the board. When no response was received from defendant, the board mailed follow-up letters including a letter of October 1, 1956, renewing the request that he complete and return SSS Form 152. Defendant made no response to these letters until October 9, 1956.

On the latter date, defendant advised the board, by letter, that he was devoting all of his time to work for the Temple of Islam in Chicago.[2] That letter was his first contact with the board subsequent to his receipt of notice of his 1–O classification. The file reveals no specific reply by the board to the October 9 letter, but on October 23, 1956, defendant was again requested, by letter, to complete and return SSS Form 152. When no response was received from defendant, the clerk of the local board advised him, by letter dated January 3, 1957, that he should meet with the local board on January 15, 1957, at which time a representative of the office of the State Director would aid the board and defendant in reaching an agreement as to the type of civilian work to which defendant would be assigned. The defendant attended the January 15th meeting, at which time he stated that he "definitely" would not participate in the civilian work program because it would interfere with his activities in conjunction with the Temple.[3]

Thereafter, on February 11, 1957, defendant was ordered to report to the local board on March 4, 1957 for assignment to Elgin State Hospital. He refused to report.[4] An indictment[5] was returned by the August, 1957 grand jury charging defendant with a violation of the Act by his refusal to report for civilian work pursuant to the February 11th order.

While that indictment was pending, on April 1, 1958, defendant wrote to the State Director stating that "I was and am a student for the ministry at the University of Islam, and an assistant

---

2. See note 8, infra.

3. "Registrant stated he has been under religious training all his life; and is sworn to devote his work and life only to Allah. He is a full-time employee in a restaurant that is operated by his religious sect namely The Temple Restaurant at 71st Street and St. Lawrence Avenue, Chicago, Illinois. He stated that he couldn't possibly have any time for any other employment. [When advised that he might be sent to prison if he refused to comply with the Act], Registrant stated 'if that was Allah's wish there wasn't anything he could do about it.' * * * the registrant stated definitely that he was not willing to participate in the Civilian Work Program in any way. * * * He explained that all his time was devoted to study and teaching of the religion of Islam when not working." Excerpt from "Memorandum of Information Received at Board Meeting" on January 15, 1957.

Two members of defendant's religious sect accompanied defendant to the January 15th meeting, but were excluded from participation in that meeting. At the trial defendant offered to prove by these persons that they would then have testified that defendant was an assistant minister of his Temple. That meeting was necessary because defendant had refused to cooperate with the local board and designate civilian work which was acceptable to him. The meeting was held for the express purpose to enable a representative of the State Director to aid the board and defendant in reaching agreement upon that subject. The question of classification was not before that meeting and the persons who accompanied defendant were properly excluded from that meeting.

4. On March 5, 1957, he gave the local board the following statement over his signature: "I am reporting to the Local Board to let the Board know I am of the same opinion. And refuse to accept any work."

5. No. 57 CR 532.

minister in our temple" since "shortly after I filed my Classification Questionnaire on December 18, 1952." [6] On April 10, 1958, Lt. Colonel Woodworth, for the State Director, advised defendant that a review of his file failed to reveal any evidence supporting his claim for a ministry student or ministerial exemption.

A trial on indictment No. 57 CR 532 was concluded May 20, 1958. A verdict of guilty was set aside and a new trial ordered on September 11, 1958, for the reason, as the Court found, that the February 11, 1957 induction order was signed only by the clerk of the local board and defendant's file contained no record that the order was issued by the board itself.

Thereafter, on October 21, 1958, the board issued a new order directing defendant to report on November 3, 1958, for work at the Elgin State Hospital. By his letter to the local board, dated October 31, 1958, defendant requested reclassification and a hearing before the local board in order to present proof of his claim, then asserted, of ministerial status.[7]

Ultimately, on November 10, 1958, the local board, by letter, advised defendant that no further action would be taken in his case. In the meantime, defendant refused to report to the local board on November 3, 1958 for work at the Elgin State Hospital. At that time defendant signed a statement, "I refuse to perform any work that will take me from my duties to Allah." The indictment, No. 59 CR 64, upon which defendant was convicted was then returned, predicated upon his refusal to obey the order of October 21, 1958.

That cause was consolidated with indictment No. 57 CR 532 for trial before the court without a jury. At the close of the government's case in chief, upon defendant's motion, a judgment of acquittal was entered as to No. 57 CR 532. Defendant was found guilty as charged in indictment No. 59 CR 64 and, after his post-trial motions were overruled by the court, was committed to the custody of the Attorney General for a period of three years.

Defendant relies upon the letters of October 9, 1956, April 1, 1958, and October 31, 1958, to substantiate his contention that he was denied due process by the local board's failure to reopen his classification. Because of the emphasis placed upon these letters, each is hereinafter fully set forth in the margin with appropriate footnote references.

The letter of October 9, 1956,[8] to the local board did not, as defendant now con-

---

6. See note 9, infra.

7. See note 10, infra.

8. The full text of that letter is as follows: "I am sorry for the delay of this letter. My time has been consumed in the services of of (sic) the Temple of Islam No. 2. I have taken full responsibility of being a full time worker for the Temple of Islam. I have dedicated my life to the services of Islam. I am preparing myself in the hopes to become a Religious Teacher of Islam.

"The Temple of Islam is depending on its Muslims for support in every way. I couldn't possibly work successfully for any other organization. I have willingly pledged twelve to sixteen hours of every day to help benefit the Temple of Islam in any way it finds necessary.

"The Temple of Islam is supporting a private school for children and it has contributed much to better the life of American so-called Negroes.

"The Message of Islam from Allah taught by our Leader, Honorable Elijah Mohammed, has changed Alcoholics, Dope Addicts (sic) and thieves to sincere and desirable Muslims.

"This is not only a services (sic) and contribution to the so-called Negroes who join the Temple, but is also a great contribution to the Government of the United States.

"If there is a Religious Group or any kind of Organization needing my services it is the Religious Group of which I am a part.

"My life and my death is all for Allah. I sincerely hope the Board will consider the work I am doing as a necessity in my life. Knowing the Temple of Islam receives no aid whatsoever from other than the Muslims belonging to it I could not do very well as a worker for any other Organization.

tends, claim ministerial status or request a reopening of defendant's classification. Defendant stated that he was then devoting his time to "the services of the Temple of Islam" and "to help benefit the Temple of Islam in any way it finds necessary." To the extent that that letter requested anything of the board, it contained the expressed "hope" that "the Board will consider the work I am doing as a necessity in my life," and that "the Board will consider my duty to Allah and my devoted services to the Religion Islam." In this context, the letter advised the board that "I couldn't possibly work successfully for any other organization" and "Knowing that the Temple of Islam received no aid whatsoever from other than the Muslims belonging to it, I could not do very well as a worker for any other organization."

> "In closing this letter I seriously hope the Board will consider my duty to Allah and my devoted services to the Religion Islam."

9. The full text of that letter is as follows:
"I, Wallace Delaney Mohammed, hereby apply to have you reconsider my classification under the Selective Service Act and permit me to submit evidence for your consideration in arriving at a proper classification.

"In support of this application, I wish to point out that since shortly after I filed my Classification Questionnaire on December 18, 1952, as the Hearing Officer's Resume Investigative Report of December 20, 1954, and my letter to your office dated October 9, 1956, both show, I was and am a student for the ministry at the University of Islam, and an assistant minister in our temple.

"The letter from Mr. T. Oscar Smith, Special Assistant to the Attorney General of the United States to the Chairman of the Appeal Board for the Northern District of Illinois, stated that I had attended and was still in attendance at the University of Islam studying the Religion of Islam. No attention was given this matter, and in spite of the report and advice given to the Hearing Officer by others, he improperly recommended that I be classified as a conscientious objector.

"On October 9, 1956, I informed the Local Board that I was actively and con-
288 F.2d—16

The letter of April 1, 1958, to the State Director stated a naked claim that "I was and am a student for the ministry at the University of Islam, and an assistant minister in our temple" since shortly after December 18, 1952, when "I filed my Classification Questionnaire". The validity of that naked claim is stated to be shown by "the Hearing Officer's Resume Investigative Report of December 20, 1954, and my letter to your office (*sic*) dated October 9, 1956." [9]

Defendant's letter of October 31, 1958, addressed to the local board requested reconsideration of his classification because "I am a minister of the Temple of Islam".[10] Reference is made to "my letter of April 1, 1958, to the Illinois State Director" to substantiate his claim of ministerial status.

Assuming, *arguendo*, that the letters of April 1, 1958, and October 31, 1958,

tinuously engaged in training for the ministry and ministerial work. My status as a ministerial student and assistant minister has not been acted upon.

"Since I am sure that your office is interested in and dedicated to the proper classification of registrants, I respectfully apply for a hearing relative to a proper reclassification under the Selective Service Act."

10. The full text of that letter is as follows:
"This is to acknowledge receipt on October 22, 1958, of an order to report for civilian work at 9:00 A.M., on November 3, 1958.

"Reference is made to my letter of April 1, 1958, to the Illinois State Director of the Selective Service System a copy of which was sent to you. At that time and continuously since that time I was and am a minister of the Temple of Islam. This information has been brought to your attention on innumerable occasions in the last two years.

"I am now again requesting you to reconsider my classification. Accordingly I hereby request a hearing before the Local Board at whatever time may be convenient to it in order to present additional proof of my ministerial status.

"In this connection your attention is directed to the fact that under the Selective Service Act ministers are exempt. I am such a minister.

"Thanking you for your attention to this matter, I am * * *."

were timely to invoke the authority of the local board to reopen defendant's classification,[11] notwithstanding the pendency, in the one instance, of an indictment predicated upon violation of an induction order, and, in the second instance, of an outstanding induction order,[12] we cannot say that the board acted arbitrarily or capriciously in refusing to reopen defendant's classification.

■■ The Act requires every male person within the specified age limits to register and, upon orders of the local boards, to submit to induction. As a matter of legislative grace, "Regular or duly ordained ministers of religion" are exempt from training and service. 50 U.S.C.A.Appendix, § 456(g). Before he is entitled to exemption, "Each registrant must satisfy the Act's rigid criteria for the exemption. * * *. And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption." Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132. In the context in which Dickinson speaks, i. e., the sufficiency of evidence submitted to overcome the finality of a classification order, the burden of establishing a right to exemption is discharged when the registrant has submitted proof which, *prima facie*, shows his entitlement to the classification claimed. Ibid., at page 397, 74 S.Ct. 152; Witmer v. United States, 348 U.S. 375, 382, 75 S.Ct. 392, 99 L.Ed. 428.

Regulation S.S. 1625.2, which governs the reopening of a registrant's classification requires that any request for reopening be accompanied by written information not previously considered by the board which, *prima facie*, would entitle the registrant to the classification claimed. That regulation provides, in pertinent part:

"The local board may reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * *." 32 C.F.R. § 1625.2.

■ Thus, defendant did not, as he seems to contend, have an absolute right to have his classification reopened and reconsidered upon a mere naked request, unsupported by any written evidence in support of his claim. His only reference to evidentiary support for his claim was to the résumé report of the Hearing Officer which had been considered by the appeal board in fixing the 1–O classification. As the Court pointed out in Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, status as a minister is susceptible of proof by the objective facts of the registrant's activities. The least that defendant could have done to satisfy the Act's rigid criteria of which the Dickinson opinion speaks was to submit written evidence of objective facts in support of his claim of exemption, in strict accordance with the regulation which implements the Act.

Moreover, defendant cannot, as he tends to do, ignore the fact that the April 1st letter was addressed to the State Director by now asserting that the local board should have then reopened his classification. The State Director did then review defendant's file. Defendant was advised by letter from the State Director dated April 10, 1958, that the Hearing

---

11. As to the letter of April 1, 1958, the assumption stated includes the assumption that action by the local board was requested by that board's receipt of a copy, only, of a letter addressed to the State Director.

12. In this respect the Regulations provide that a local board may reopen a classification under certain circumstances but

"the classification of a registrant *shall not* be reopened after the local board has mailed to such registrant an Order to Report for Induction * * *, unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. Sec. 1625.2.

Officer's Report had been considered in fixing the 1–O classification, that defendant's letter of October 9, 1956, had been reviewed and that the file, as thus constituted, contained no evidence that defendant was entitled to the classification claimed.

■ Upon receipt of that advice, defendant made no attempt to submit written proof of facts showing his entitlement to the claimed exemption. Instead, he waited until October 31, 1958, three days before he was to report for assignment to Elgin State Hospital to reassert his naked claim by a letter, with reference only to his letter of April 1, 1958, as substantiation of the merits thereof. The board had no authority to reopen defendant's classification at that time. An order to report for civilian work had been mailed to defendant on October 21, 1958, and the board could, therefore, reopen the classification only upon the basis of a specific finding of "a change in the registrant's status resulting from circumstances over which the registrant had no control." S.S. 1625.2, 32 C.F.R. Sec. 1625.2.

The selective service agencies were here presented with the file of a registrant who had expressly disclaimed ministerial status in his classification questionnaire. His claim of conscientious objector status had been granted upon file information, *inter alia*, that he was attending the University of Islam, a private school operated by his sect, in a curriculum which included religious instruction. He had attended the same school since the age of seven years as the trial judge so aptly pointed out in his memorandum. He expressed no dissatisfaction with the 1–O classification given on June 6, 1956, until after the local board had begun processing his file for his induction into civilian work of national importance. He was advised within five days after his 1–O classification that civilian work was contemplated to be ordered. He still remained silent for approximately four months until October

9th. He then advised the local board that he could not work for any other organization because he was serving the Temple of Islam "in any way it finds necessary." At the meeting on January 15, 1957, he stated that he was working full time in a restaurant operated by his sect. He did state that he was devoting his spare time to study and teaching of the religion of Islam,[13] but still did not submit any written evidence of any change in his status, as reflected by the evidence in his file at the time the 1–O classification was given. Instead, he waited until he had been indicted for disobedience to an order to report for work. On the eve of his trial on that indictment, his letter of April 1, 1958, asserted to the State Director that the same evidence which had been previously considered by the appeal board showed that he had been a student for the ministry of Islam since shortly after December 18, 1952, a claim which he then asserted for the first time. He might yet have submitted proof to substantiate his claim, but did not do so. After a new trial had been ordered upon the 1957 indictment, and after a new order to report for assignment to civilian work had been entered, he wrote his letter of October 31, 1958, claiming that he was, and had been since April 1, 1958, a minister of the Temple of Islam. He received a prompt response to each the April 1, 1958 and October 31, 1958, letters from the agency to which the letters had been respectively addressed.

The board was not arbitrary in its refusal to reopen defendant's classification upon the record in this case. In addition to the rationale upon the principles stated in Dickinson, to which we have previously alluded, our conclusion finds support in the following cases, among others. Witmer v. United States, supra at 383–384, 75 S.Ct. 392, 99 L.Ed. 428; United States v. Diercks, 7 Cir., 223 F.2d 12, certiorari denied 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750; United States v. Smith, D.C.E.D.Ill., 124 F.Supp. 406, 409, aff'd United States v. Hoepker,

13. See note 3, supra.

7 Cir., 223 F.2d 921, certiorari denied 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750; Frank v. United States, 9 Cir., 236 F.2d 39, 43–44.

Defendant's reliance upon United States v. Vincelli, 2 Cir., 215 F.2d 210, United States ex rel. Berman v. Craig, 3 Cir., 207 F.2d 888, Smith v. United States, 4 Cir., 157 F.2d 176, certiorari denied 329 U.S. 776, 67 S.Ct. 189, 91 L.Ed. 666, and Chih Chung Tung v. United States, 1 Cir., 142 F.2d 919, is misplaced. Each of those cases involved a denial of procedural fairness in a hearing before a local board or a denial of the right to appeal a classification given.

Likewise, neither United States v. Ransom, 7 Cir., 223 F.2d 15, nor Olvera v. United States, 5 Cir., 223 F.2d 880, upon which defendant relies, is in point. In Ransom, we held that due process of law was denied by a local board's refusal to reopen Ransom's 1–O classification in the face of *prima facie* proof submitted by Ransom that he was a minister. Olvera was reversed, *inter alia,* upon the ground that the local board had acted arbitrarily in refusing to reopen a classification "because we don't have to", notwithstanding evidentiary support for the classification claimed.

Defendant next contends that his right of freedom of religion was violated by both the administrative and judicial procedures in this case. We reject that contention. The record does not disclose any discrimination against defendant by either the selective service agencies or the District Court. His file was processed pursuant to the Act and established regulations. The procedure employed in the trial court was in accordance with the standards of judicial procedure. The fact that defendant's predisposition to devote his time to his sect might be disturbed by the duties imposed by the selective service laws merely epitomizes the harsh reality of the age in which we live, when military conscription is necessary to the national defense.

Freedom to believe and adopt one's chosen form of religion is an absolute right, but freedom of action in following one's concept of religion is "subject to regulation for the protection of society". Cantwell v. Connecticut, 310 U.S. 296, 303–304, 60 S.Ct. 900, 903, 84 L.Ed. 1213. There is here no interference with defendant's right to adopt and believe the religion of his choice. To the extent that his freedom of desired action in the practice of his religious faith is curtailed, that curtailment is a permissible result of the selective service laws adopted and enforced for the protection of the nation. Warren v. United States, 10 Cir., 177 F.2d 596, 598–600, certiorari denied 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584.

Finally, we have considered and we reject other contentions of defendant without specific comment except as follows. Documents properly identified as a part of defendant's selective service file upon which the local board and the appeal board had acted were properly admitted in evidence and considered by the court. The record discloses no improper influence by Lt. Colonel Woodworth with the action of the local board by his participation as a representative of the State Director in the January 15, 1957, meeting of the local board with defendant. That meeting was held for the single purpose of making a determination whether a work assignment could be found which defendant would accept. Although it appears that Col. Woodworth did most of the talking at that meeting, the question of defendant's classification was not before the board. The participation of Col. Woodworth at that meeting was not a violation of the Act.[14] Julian v. United States, 6 Cir., 236 F.2d 155, 158–159.

The judgment is affirmed.

14. 50 U.S.C.A.Appendix, § 460(b) (2, 3).