**UNITED STATES of America,**
**Plaintiff,**
v.
**Joseph Richard KUTZ, Defendant.**
**No. 60–CR–140.**

United States District Court
E. D. Wisconsin.
Nov. 28, 1961.

206

James B. Brennan, U. S. Atty., by William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

James R. Mattison, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Defendant, Joseph Richard Kutz, is charged in an indictment with refusal and failure to report for civilian work in lieu of military service pursuant to an order of his draft board dated January 25, 1960, in violation of Section 462 of Title 50, Appendix, U.S.C.A., Universal Military Training and Service Act. The case has been tried to the court and has been submitted on post-trial briefs.

Defendant contends that his original classification by Local Board No. 39, Marinette County, Marinette, Wisconsin, as a conscientious objector was void because there was no evidence before the Board to controvert his claim that he was a minister at that time. Further, defendant submits that the Board acted arbitrarily in failing to reopen his classification after he offered additional evidence of his ministerial status in 1956. He contends that an order to report for civilian work, based on a void classification, is a nullity and cannot form the basis for a criminal prosecution for its violation.

The following facts, material to defendant's contentions, appear from his Selective Service file and the testimony on the trial. In his original Classification Questionnaire filed with the Board on March 30, 1954, defendant stated that he served regularly as a minister and was formally ordained on July 22, 1953, and that he was a full-time student preparing for the ministry. He listed woodworking as his present occupation. Defendant indicated that he believed he was entitled to classification in Class IV–D because he was a regular and ordained minister.

In a Special Form for Conscientious Objectors filed with the Board on April 5, 1954, defendant claimed exemption from combatant and noncombatant training and service in the Armed Forces by reason of his religious training and beliefs as a member of Jehovah's Witnesses. He stated that he had been engaged in house-to-house ministry for eight years; that he had been a pioneer minister since October 1953; and that

he had been in the ministry, Jehovah God, from 1944 to 1954.

On July 23, 1954, the Board classified defendant as a conscientious objector, Class I–O. In his request for an appeal therefrom and for a personal appearance before the Board, defendant claimed that he was an ordained minister devoting 150 hours a month to preaching and studying for the ministry, and that he was a student preparing for better ministry under the direction of the Watchtower Society.

A summary of the hearing held at defendant's request on November 5, 1954, reveals that defendant testified under oath that the ministry was his occupation and that he had a 40 hour a week job as a woodworker at an average weekly salary of $38. His secular hours of employment were from 7:00 a. m. to 4:00 p. m. He arose about 5:30 a. m., and took about fifteen minutes for breakfast and one hour for dinner. Usually he did not eat again until he returned home at 10:00 to 10:30 p. m., and sometimes he did not eat at all.

In respect to his vocation as minister, defendant stated that he began his church activities after cleaning up and changing his clothes at his secular job. He worked from about 5:00 p. m. to 7:00 or 7:30 p. m. and sometimes later if there were meetings. In addition, he worked all day Saturday and Sunday. His ministerial activities were divided into about 100 hours a month spent in house-to-house preaching and teaching and about 75 hours a month studying. He further stated that he had held the office of pioneer minister since February 4, 1954, that his parents had been Jehovah's Witnesses for about five to six years, and that his younger brothers also belonged to the Society.

It appears from the minutes of the Selective Service file that Section 1622.43 of 32 C.F.R., relating to eligibility for the ministerial classification, had been read to the Board in conjunction with the hearing. The Board continued defendant in the classification of conscientious objector, Class I–O, by a vote of 5 to 0, and the Appeal Board affirmed this classification.

In March 1956, after having been contacted by the Board relative to the performance of civilian work, defendant submitted a photostatic copy of a document bearing the caption of the Watchtower Bible and Tract Society entitled "Certificate for Pioneer." The document states that defendant had been duly ordained on July 22, 1953, and was duly appointed as a pioneer minister on February 1, 1954. Defendant requested reclassification as a minister, claiming that he put in a minimum of 100 hours a month preaching, making house back-calls, and conducting Bible studies with interested persons. He also wrote that he attended various meetings and school three days a week and that he was pursuing private studies. On April 6, 1956, the Board, after a reading of Section 1622.43 of 32 C.F.R., continued defendant in the classification as conscientious objector by a vote of 5 to 0.

Subsequent proceedings before the Board on defendant's renewed requests for reclassification are not material to defendant's contentions. He remained in the classification of conscientious objector up to and including the time of his refusal and failure to obey the order to report for the performance of civilian work.

The Selective Service record before Local Board No. 39 does not support a finding that said Board acted arbitrarily in classifying defendant as a conscientious objector and in continuing him in this classification. There was no denial of due process of law because the evidence offered by defendant in support of his requests for ministerial classification and exemption did not suffice to constitute a prima facie showing of his eligibility therefor. Cf. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Ransom, 223 F.2d 15 (7th Cir., 1955).

The showing before the Board at the time of defendant's original classification in 1954 consisted of defendant's statements in response to the Selective

Service questionnaires, a letter written by defendant, and his sworn statements at the hearing held at his request. The information thereby presented was that defendant held a 40 hour a week woodworking job; that he was a full-time ministerial student; that he spent either 150 hours a month in preaching and studying for the ministry or 175 hours a month in these religious activities; that he held ministerial status as a pioneer minister since July or October of 1953 or since February of 1954; and lastly, that defendant believed in the use of force only in self-defense, but not with carnal weapons, based on his religious convictions as a member of Jehovah's Witnesses. Defendant offered no documentary or other corroborating evidence in support of his claimed ministerial activities.

Defendant's showing reveals certain ambiguities and discrepancies. Inconsistencies in claiming full-time status as a student and as a full-time minister, as well as in the varying dates given for the commencement of the pioneer activities, may perhaps be explained by the particularities of the practices of defendant's religious denomination. See United States v. Tettenburn, 186 F.Supp. 203 (D.Md.1960), for a comprehensive discussion of the practices of Jehovah's Witnesses. Inconsistencies as to the hours defendant claimed to have spent in following his ministerial vocation are not as readily explainable. These inconsistencies tend to show his intention to have the hours of ministerial activity equal those of his secular employment. Defendant's testimony in this respect does not clearly establish that he devoted any given time, whether 150 hours or 175 hours, to his ministerial activities. In light of defendant's 40 hour a week secular employment, the discrepancies noted above, and, most important, the total lack of any corroborating evidence as to his ministerial status and activities, defendant's showing fails to establish prima facie that he was entitled to a ministerial classification. In respect to a comparable situation, it has recently been noted in

United States v. Mohammed, 288 F.2d 236, 242 (7th Cir., 1961), certiorari denied 82 S.Ct. 37, as follows:

"* * * As the Court pointed out in Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392 [99 L.Ed. 428], status as a minister is susceptible of proof by the objective facts of the registrant's activities. The least that defendant could have done to satisfy the Act's rigid criteria of which the Dickinson opinion speaks was to submit written evidence of objective facts in support of his claim of exemption, in strict accordance with the regulation which implements the Act."

In light of the realities of the situation as presented by defendant, denial of the requested classification requires no further factual evidence to contradict his claims. The basis for the denial appears from the face of defendant's evidence and the manner of its presentation. United States v. Ransom, supra, 223 F.2d at page 18; and see United States v. Cheeks, 159 F.Supp. 328, 329 (D.Md. 1958).

Documentary proof of defendant's ministerial status submitted in 1956 in support of his request for reopening of his classification, together with defendant's letter stating that he was devoting a minimum of 100 hours a month to ministerial activities and additional time to study, did not suffice to render the Board's denial of said request arbitrary. The photostatic copy of a document bearing the caption of the Watchtower Bible and Tract Society entitled "Certificate for Pioneer" may serve to establish the status accorded defendant by his religious society in 1953 and 1954. Assuming that defendant in fact held the status of a duly ordained minister in accordance with the practice of his denomination, neither the documentary proof thereof nor defendant's letter at this time offers new evidence that defendant in fact practiced the ministry as his vocation. The letter is silent as to the number of hours devoted to secular employment. It adds no new information

as to the ministerial activities of defendant except to the extent that the time he claims to devote thereto may appear to be somewhat less than that stated in 1954. This proof falls short of the showing required for reopening a registrant's classification as set forth in Section 1625.2, 32 C.F.R. See United States v. Mohammed, supra, 238 F.2d at page 242.

There is no merit to defendant's contention that the Board reclassified him at this time without affording him a hearing. The reference to "re-classification" on April 6, 1956, made by a representative of the State Director in summarizing defendant's Selective Service file at a hearing on October 10, 1958, is in error as shown by the minutes of the Board for the events in question.

In arriving at the conclusion that there has been no denial of due process, the court has not relied on later proceedings had in respect to defendant's selective service status. Reference thereto does, however, illuminate the probative force of documents, valid on their face, offered in proof of ministerial status and of a registrant's otherwise unsupported claims as to his ministerial vocation.

In 1958 defendant again requested reclassification as a minister. He submitted further credentials of his pioneer ministerial status—a "Certificate of Ordination" issued by the Clerk of the Circuit Court, Marinette County, Wisconsin, filed as of July 7, 1958. Defendant testified that he was putting in full time with the organization—about 20 hours a week—and that he had no secular employment at that time. Supporting letters submitted by defendant characterize his activities as part-time ministry. Evidence adduced at the trial established, however, that defendant did not in fact hold status as a pioneer minister after January 1957 and did not regain such status until after the commission of the alleged offense for which he is being tried. Loss of religious zeal, even if this had resulted from an erroneous classification as the defendant claims,

does not justify submission of invalid proof of ministerial status.

Defendant has cited Wiggins v. United States, 261 F.2d 113 (5th Cir., 1958), certiorari denied 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676, and Pate v. United States, 243 F.2d 99 (5th Cir., 1957), in support of his contentions. The registrant in the Wiggins case, a 40 hour a week crane operator, supported his claim to ministerial exemption with numerous uncontradicted certificates and letters from individual members of his religious society. His draft board, as did the board in the Pate case, may have applied erroneous criteria in determining the eligibility of Jehovah's Witnesses for the ministerial exemption. The court further held that the statute granting said exemption—Section 466(g) of Title 50, Appendix, U.S.C.A.—must be broadly construed in a Jehovah's Witness case.

There is nothing of record to indicate that Local Board No. 39 showed hostility to defendant or that it misapprehended the criteria of eligibility for the ministerial exemption. To the contrary, the Board showed a proper concern about the religious beliefs held by him. It classified him as a conscientious objector in accordance with his beliefs which were subjective in nature and not susceptible of objective proof. Further, the Board questioned him closely about his ministerial vocation and the time he claimed to devote to its practice as compared with that spent in his secular employment. On the basis of the showing made by defendant, the Board's refusal to classify defendant as a minister and its refusal to reopen his classification were not arbitrary or capricious.

 This court does not believe that the principle of broad construction declared by the Court of Appeals for the Fifth Circuit relieves a registrant of the burden of clearly showing his eligibility as to status as a minister and as to the practice of his vocation regardless of the religious denomination in which he claims membership. See United States v. Kahl, 141 F.Supp. 161 (E.D.Mich. 1956); United States v. Diercks, 223 F.2d

210

12 (7th Cir., 1955), certiorari denied 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750; and United States v. Mohammed, supra. This burden has not been met by defendant.

The court finds the defendant guilty as charged.