**UNITED STATES of America,**

v.

**Lemuel Leon ORR, Jr., Defendant.**

**No. 71 Cr. 1343.**

United States District Court,
S. D. New York.

May 11, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; George E. Wilson, Sp. Asst. U. S. Atty., of counsel.

Alfred Lawrence Toombs, New York City, for defendant.

OPINION

EDWARD WEINFELD, District Judge.

The defendant in this nonjury trial was charged with refusal to report for induction into the Armed Forces.[1] The essential fact that he intentionally and willfully failed to report for induction when ordered to do so is not in dispute. Defendant urges he is entitled to acquittal upon the ground that the Local Board erred in denying his application for conscientious objector status.[2]

The defendant registered with Local Board 12 in New York City in September 1969; he submitted his classification questionnaire (SSS Form 100) and asserted a claim for conscientious objector status. Special Form for Conscientious Objectors (SSS Form 150) was mailed to the defendant by his Board on July 2, 1970, but he failed to return it. Thereafter, on October 27, 1970, the Board classified him I–A, noting on his file, "doubt sincere C.O." He was duly notified of his I–A classification and of his right to a personal appearance and appeal. On November 18, 1970, he appeared before the Board and again asserted a claim for conscientious objector

status. The Board's summary of his appearance follows:

"Registrant appeared and was sworn. States he failed to return Form 150 because it was lost or destroyed in a fire. States he is a member of the Muslim religion and has been so for the past 8 or 9 months. He participates regularly in their activities and works in one of their health food stores. Produced membership card.

"He claims conscientious objector exemption by reason of his religious beliefs and membership in the Muslim religion that he should not take part in wars which take human lives. However, he states he is not opposed to participation in all wars; that he would participate in a war in self defense which he thought was a threat to him, his family, his mosque, his loved ones or intimate community. Board believes he is sincere in his beliefs. Registrant informed to complete & return form 150 and consideration to be given upon receipt of same."

The defendant returned the Form 150, which contained the following statement by him, describing the nature of his belief that was the basis of his claim:

"We Believe that we who declared ourselves to be rightous [sic] Muslims, should not participate in wars which take the lives of humans. We do not believe this nation should force us to take part in such wars, for we have nothing to gain from it, unless America agrees to give us the necessary territory wherein we may have something to fight for."

On December 16, 1970, the Local Board noted:

"Unable to determine sincerity without personal interview. Call in for interview."

1. 50 U.S.C.App. § 462(a); 32 C.F.R. § 1632.14.

2. 50 U.S.C.App § 456(j) grants exemption from military service to any registrant who "by reason of religious training and belief, is conscientiously opposed to participation in war in any form"

Thereafter, the defendant, at the Board's request, appeared for a second personal interview on February 16, 1971, at which time his claim was considered. The following summary was made by the Board of what transpired:

"Registrant appeared and affirmed to tell the truth. He is a member of Muslim religion. He cannot participate in armed services as his present work is more meaningful. Present wars and conflicts have no value to him.

"However, he could participate in a war that has value or meaningful benefit to him. Not eligible for C.O. classification. Reopening not warranted." [3]

The Local Board rejected his claim by a vote of 4–0; on March 25, 1971, the Appeal Board unanimously classified defendant I–A by a vote of 5–0. He was ordered to report for induction on May 11, 1971, having been previously found physically acceptable for military service. Upon his failure to report, this prosecution was commenced.

The Supreme Court recently summarized the essential requirements to sustain a conscientious objector claim:

"In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437 [91 S.Ct. 828, 28 L.Ed.2d 168]. He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163 [, 85 S.Ct. 850, 13 L.Ed.2d 733]; Welsh v. United States, 398 U.S. 333 [90 S.Ct. 1792, 26 L.Ed. 2d 308]. And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375 [75 S.Ct. 392, 99 L.Ed. 428]." [4]

■ The Board here found the defendant had failed to qualify under the first test—that he "is conscientiously opposed to participation in war in any form." [5] The court's power to review this finding is circumscribed. The Board's determination that the defendant was not entitled to conscientious objector classification must be upheld unless it is without basis in fact.[6] The judicial review on this issue must be based upon the record before the Board.[7]

■ The record indicates there was ample basis in fact for the Board's determination. It reflects that the defendant's opposition to war was conditional. Opposition to participation only in some wars, even if founded upon principles arising out of a registrant's religious convictions, does not qualify him for the exemption.[8] Defendant's statement in

3. See 32 C.F.R. § 1624.2(c).

4. Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971).

5. 50 U.S.C. App. § 456(j).

6. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Rosengart v. Laird, 449 F.2d 523, 530 (2d Cir. 1971), vacated on other grounds, 405 U.S. 908, 92 S.Ct. 931, 30 L.Ed.2d 779 (U.S.1972); 50 U.S.C. App. § 460 (b) (3).

7. Cox v. United States, 332 U.S. 442, 453–455, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States ex rel. Kellogg v. McBee, 452 F.2d 134, 137 (7th Cir. 1971); United States v. Hershey, 451 F.2d 1007 (3d Cir. 1971); Helwick v. Laird, 438 F.2d 959, 965 (5th Cir. 1971); United States v. Mohammed, 288 F.2d 236, 238 (7th Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26 (1961); Cohen v. Laird, 315 F.Supp. 1265, 1270 n. 10 (D.S.C. 1970); United States v. Ruppell, 278 F. Supp. 287 (E.D.N.Y.1968); United States v. Wider, 119 F.Supp. 676, 681 (E.D.N.Y.1954); United States ex rel. Lawrence v. Commanding Officer, 58 F. Supp. 933, 940 (D.Neb.1945).

8. See Clay v. United States, 403 U.S. 698, 706–709, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) (concurring opinion, Douglas, J.); Gillette v. United States, 401 U.S. 437, 445–446, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

---

his Form 150 that as Muslims "we have nothing to gain from [participating in wars] unless America agrees to give us the necessary territory wherein we may have something to fight for," negates any claim of opposition to all wars. However, the Board did not rely upon defendant's mere statement of belief as set forth in his Form 150. At the second personal interview, his views were fully considered and the Board concluded his beliefs showed readiness to "participate in a war that has value or meaningful benefit to him," a finding that was concurred in by all three Board members who interviewed him. This is fully consistent with the form in which defendant himself stated his beliefs on the Form 150. No ground has been advanced to question the Local Board's accuracy or integrity in characterizing the defendant's beliefs, especially in view of defendant's own statement that its members' attitude toward him was "going strictly by the book."

The defendant based his claim for conscientious objector status upon the tenets of the Muslim religion.[9] At the trial he elaborated upon what he had stated to the Board concerning his readiness to defend his community or co-religionists against attack; he stated there were no circumstances in which he would ever fight with "carnal," i. e., earthly, weapons; that he did not condition this belief upon which race fought a war; and that he would use force only to defend himself, his loved ones and his mosque, and then only by the use of his hands and feet and not with weapons of any kind. He denied stating to the Local Board that he could participate in a war that had meaningful benefit to him and testified he told the Chairman of the Local Board that he would never fight with weapons. The Chairman of the Board testified he did not recall whether the phrase "meaningful benefit" was that of the defendant or a member of the Local Board, but affirmed that it had denied the defendant's application on the ground that he was not opposed to participation in all wars. There is no basis upon this record to question that such was the ground of the Board's denial.

The defendant, however, contends that the Board committed legal error in that its rejection of his claim was grounded upon his acknowledgment given at his first interview (when he was given the Form 150, which he thereafter filed) ". . . that he would participate in a war in self defense which he thought was a threat to him, his family, his mosque, his loved ones or intimate community"; that accordingly the Board erroneously assumed that he failed to meet the statutory requirement of "opposition to war in any form." The record is clear, however, that the Board did not find that his readiness to act in self defense under his stated conditions foreclosed exemption under the statute;[10]

---

9. The government does not dispute defendant's claim is rooted "in religious training and belief." See Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); United States v. Seeger, 380 U.S. 163, 86 S.Ct. 850, 13 L.Ed.2d 733 (1965). See also Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (1972) (dissenting opinion, Douglas, J.).

10. It has been held that conscientious objector exemption is not foreclosed to registrants who express readiness to use violence to protect members of their church as well as themselves and their families. See, e. g., United States v. Sicurella, 348 U.S. 385, 389, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Carroll, 398 F.2d 651, 655 (3d Cir. 1968); United States v. Lauing, 221 F.2d 425 (7th Cir. 1955); Shepherd v. United States, 217 F.2d 942 (9th Cir. 1954); United States v. Hartman, 209 F.2d 366, 370 (2d Cir. 1954). See also Gillette v. United States, 401 U.S. 437, 448, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); United States v. Haughton, 413 F.2d 736, 741–742 (9th Cir. 1969); United States v. Purvis, 403 F.2d 555, 563 (2d Cir. 1968); Thomas v. Salatich, 328 F.Supp. 18, 24 (E.D.La.1971).

to the contrary, it is clear that the denial of defendant's claim for exemption was based upon his acknowledgment of his readiness "to participate in a war that has value or meaningful benefit to him," made at his second interview after he had filed his Form 150, which contained the statement of his belief that "we have nothing to gain from [participating in wars] unless America agrees to give us the necessary territory wherein we may have something to fight for."

The defendant, recognizing the import of his expressed beliefs, orally and in writing, contends, however, that they are merely an expression of readiness to participate in a "theocratic" or "theological" war sanctioned in Sicurella v. United States,[11] where the Supreme Court held that willingness of Jehovah's Witnesses to use force in defense of the Kingdom's interest and brethren and to participate in the "Armageddon," a spiritual war between the forces of good and evil to be fought without "carnal" or earthly weapons, did not preclude conscientious objector status.

On analysis of this record, there is no basis for equating defendant's position here to that of Sicurella. Defendant's statement of belief in his questionnaire, which tracks the language used by the leader of the Muslims[12] indicates in plain language that the creed permits participation in wars in which members have "something to fight for." Although the beliefs of the religious sect to which a registrant belongs are relevant, "each case of necessity must be based upon the particular beliefs of the registrant."[13]

No cases have been brought to the court's attention, nor has independent research revealed any, in which a claim for conscientious objector status has been granted to a registrant who stated his beliefs in the same form as did the defendant. While it appears that some professed Black Muslims have been granted the exemption, there is no indication that any of them used the formulation here encountered.[14] Defendant's conscientious scruples relating to war do not "amount to conscientious opposition to participating personally in any and all war."[15] The Local Board, on the basis of what defendant presented before it, had a basis in fact for deciding he was a selective objector and failed to meet the statutory test.

■ Finally, defendant claims his conviction is barred because the Appeal Board failed to state any reasons for his classification. No authority has been cited to support that contention, nor has any reason been shown to require the Appeal Board to restate the reasons given by the Local Board where, as here, there is no basis for any claim that the Local Board employed a legally errone-

---

11. 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

12. See E. Muhammad, Message to the Blackman, 164 (1965).

13. Sicurella v. United States, 348 U.S. 385, 390, 75 S.Ct. 403, 99 L.Ed. 436 (1955). See also Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 29 L. Ed.2d 810 (1971).

At the trial, the defendant offered in evidence the book authored by the leader of his sect, Elijah Muhammad; this had not been submitted by the defendant to the Local Board and it is not clear it may be considered here. See Sicurella v. United States, 348 U.S. 385, 390, 75 S.Ct. 403, 99 L.Ed. 436 (1955); in any event, a reading of its contents indicates the sect is not opposed to participation in all wars. See E. Muhammad, Message to the Blackman, 26, 36, 82, 133, 158, 164, 187, 197, 327 (1965). See also remarks of Mr. Justice Douglas, dissenting in Joseph v. United States, 405 U.S. 1006, 92 S.Ct. 1274, 31 L.Ed.2d 473 (U.S.1972).

14. United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); United States v. Mohammad, 288 F.2d 236 (7th Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26 (1961); United States ex rel. Barr v. Resor, 309 F.Supp. 917 (D.D.C. 1969), aff'd, 143 U.S.App.D.C. 292, 443 F.2d 707 (1971).

15. Gillette v. United States, 401 U.S. 437, 443, 91 S.Ct. 828, 832, 28 L.Ed.2d 168 (1971).

ous standard in denying a registrant's claim.[16]

Accordingly, the defendant is found guilty.

The foregoing shall constitute the Court's Findings of Fact.

16. *See* United States v. Aull, 341 F.Supp. 389, 394 n. 20 (S.D.N.Y.1972) and cases cited therein. Although Congress, in the 1971 amendments to the Military Selective Service Act of 1967, Pub.L. No. 92–129, 85 Stat. 348, added a new section to the Act providing that "the local or appeal board making [a] decision [adverse to the claim of a registrant] shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision," 50 U.S.C. App. § 471a(b) (4), that provision did not become effective until October 1, 1971, and in any event, calls for such furnishing of reasons only upon a registrant's request.